**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:20 cv 22662**

CAREPATROL FRANCHISE
SYSTEMS, LLC a Delaware
Limited Liability Company,

    Plaintiff,

vs.

KIRBY CARE, INC., A Florida
Corporation and WENDY
KIRBY, an Individual

    Defendants                /

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

    Plaintiff, CarePatrol Franchise Systems, LLC ("CarePatrol"), by and through its undersigned counsel, hereby sues Defendants, Kirby Care, Inc. ("Kirby Care") and Wendy Kirby ("Kirby") (collectively, "Defendants") and alleges:

## PARTIES AND JURISDICTION

    1.    This Court has subject matter jurisdiction over the claims relating to the Lanham Act (15 U.S.C. §§ 1125 et. seq.) pursuant to 28 U.S.C. § 1331 (federal subject matter jurisdiction) and 28 U.S.C. § 1338(a) (any act of Congress relating to trademarks). This Court has subject matter jurisdiction over the related state law claims under 28 U.S.C. § 1367.

    2.    Venue is proper in this judicial district under 28 U.S.C. § 1391, because the Defendant has committed acts of trademark infringement in, and/or a substantial portion of the events giving rise to the claims herein arose in, this Judicial District

3. CarePatrol is a Delaware Limited Liability Company with its principal place of business located at 1760 E. Pecos Road, Suite 338, Gilbert, Arizona, 85295. None of its members are citizens of the State of Florida.

4. CarePatrol has a legitimate business interest in protecting its substantial relationships with prospective or existing customers, trade secrets, valuable confidential business information, its goodwill throughout parts of Florida, and protecting against competition in its business.

5. Upon information and belief, Kirby is an individual residing in Miami-Dade County, Florida and is otherwise *sui juris*.

6. Upon information and belief, Kirby Care is a Florida corporation headquartered at 22219 SW 99 Court, Cutler Bay, FL 33190.

7. Kirby Care is a Florida entity doing business in the state of Florida.

8. CarePatrol has engaged undersigned counsel to represent it in this action and is obligated to pay a reasonable fee for services rendered herein.

9. CarePatrol is entitled to recover its attorney's fees and costs in connection with this litigation pursuant to Florida Statutes and pursuant to the parties' franchise agreement, as set forth in greater detail below.

10. CarePatrol has complied with all conditions precedent to bringing these claims, or such conditions have been waived, excused or prevented.

## **COMMON ALLEGATIONS**

11. CarePatrol is a franchisor of a network of carefully vetted and approved franchised businesses that provide senior care placement services throughout the United States.

12. To this end, CarePatrol has acquired and developed a unique management and business methodology for providing such services, which CarePatrol has branded as its "CarePatrol Senior Placement Services" (hereinafter collectively referred to as the "Services").

13. In order to provide the Services, CarePatrol has developed and maintained certain confidential information, trade secrets, formats, designs, systems, method, specifications, standards and procedures as well as other intellectual property rights such as trademarks, services marks, logos and other commercial symbols (together with the Services, collectively referred to as the "System").

14. CarePatrol has streamlined the System into a licensable business operation and will franchise the same through individuals and entities that are qualified and approved by CarePatrol and subject to agreed upon terms and conditions with franchisees as set forth below.

15. As qualified franchisees, the approved entities and individuals own and operate a business in a specified/select location(s) to offer the Services and otherwise benefit from the use of CarePatrol's successful and proprietary System.

16. In exchange for the use of the System and license to offer CarePatrol's Services, the franchisees pay to CarePatrol certain fees and royalties as further specified and agreed upon by the parties in a franchise agreement, as outlined below.

## The Franchise Agreement

17. Around March 12, 2014, Defendants agreed to and executed the CarePatrol Franchise Agreement to operate a CarePatrol business using CarePatrol's System and operating as Kirby Care (the "Franchise Agreement"). The Franchise Agreement is attached hereto as **Exhibit A**[1].

---

[1] Pursuant to Section § 26.1, the Franchise Agreement is governed by Arizona law.

18. Pursuant to the terms and conditions of the Franchise Agreement, CarePatrol granted Defendants the exclusive right to own and operate a CarePatrol business for a period of five years within a select location in Florida, which generally included the area surrounding Miami-Dade County, and is more specifically identified in the Franchise Agreement (the "Protected Territory"). (*See* Franchise Agreement at § 1.10.)

19. In exchange for the use of CarePatrol's System and the exclusive right to offer CarePatrol's Services in the Protected Territory, Defendants agreed to pay CarePatrol an initial franchise fee upon the signing of the Franchise Agreement and thereafter royalty and service fees during the term of the Franchise Agreement. (*See* Franchise Agreement at § 5.)

20. In the event of the Franchise Agreement's termination, Defendants were obligated to certain post-term requirements, including, among other things, immediately ceasing the use of CarePatrol's Marks, as defined in the Franchise Agreement, and complying with all covenants described in Sections 12.03 and 14.01 of the Franchise Agreement. (*See* Franchise Agreement at §§ 12.03 and 14.01.)

21. More specifically, the covenants in Section 14.01 of the Franchise Agreement prohibits the operation of a competitive business providing competitive goods or services to clients who are located within a fifty (50) mile radius from the Protected Territory and from any franchised, CarePatrol-owned or affiliated company-owned premises during the post-term restricted period of two years. (*See* Franchise Agreement at § 14.01.)

22. Section 12.03 of the Franchise Agreement states that, upon termination of the Franchise Agreement, Defendants must, among other things, cease doing business under any of the Marks, assign all domain names and Internet directory listings that contain the Marks to

4

CarePatrol, and refrain from identifying themselves as a CarePatrol franchisee. (*See* Franchise Agreement at § 12.03.)

23. The Franchise Agreement also provides that CarePatrol "is the sole and exclusive owner of the Intellectual Property and the goodwill associated with the Marks," that the use of CarePatrol's Intellectual Property is derived solely from the Franchise Agreement, and that use of the Intellectual Property is limited to a license granted by CarePatrol during the term of the Franchise Agreement. (*See* Franchise Agreement at § 6.)

24. Currently, CarePatrol holds a registration for "Care Patrol" Reg. 3698342 and "CarePatrol" Reg. 5835831. These marks are valid, unrevoked, subsisting and constitute *prima facie* evidence of CarePatrol's exclusive ownership of the trademarks.

25. Following the completion of the Franchise Agreement's initial five year term, CarePatrol sent Defendants a Notice of Franchise Non-Renewal and Termination of Agreement letter in May 2019, attached hereto as **Exhibit B**.

26. The Notice and Termination Letter reiterated to Defendants their post-termination obligations under the Franchise Agreement. *Id.*

27. Notwithstanding their obligations as described above, and more fully set forth in the Franchise Agreement, Defendants materially breached the Franchise Agreement by, among other things, operating a competitive business utilizing CarePatrol's System in violation of Sections 12.03 and 14.01 of the Franchise Agreement and the Noncompetition Agreement attached as "Exhibit I" to the Franchise Agreement.

28. CarePatrol discovered Defendant's breaching conduct on several online web pages, which improperly advertises the operation of Kirby Care within the Protected Territory.

(*See* **Exhibit C**) and in violation of the Franchise Agreement. The web pages plainly list Ms. Kirby as an agent of Kirby Care. (*Id.*)

29. Further, Defendants have failed to remove co-branded advertisements and continue to utilize co-branded advertisements using CarePatrol's name in direct breach of the Franchise Agreement.  (*See* **Exhibit D**, Co-Branded Advertisements.)

30. A search of Florida's Department of State, Division of Corporation revealed Kirby Care's active status as of February 2020. (*See* **Exhibit E**, Florida Entity Search)

31. After CarePatrol's discovery of the unauthorized continuation of the competitive business, CarePatrol sent a letter demanding that Defendants: (i) immediately cease operation of the CarePatrol model; (ii)  immediately cease operation of Kirby Care and/or any other competitive business that would violate the post-termination obligations under the Franchise Agreement; and (iv) to contact CarePatrol's counsel within fourteen (14) days to provide sufficient evidence demonstrating that the aforementioned Defendants have taken the foregoing action. (*See* **Exhibit F**, Cease and Desist Letter.)

32. Defendants failed and neglected to cease the infringing conduct, and further failed and neglected to respond to the Cease and Desist Letter or otherwise contact CarePatrol's counsel to work toward a resolution of the matter.

33. Pursuant to Sections 12.03 and 14.01 of the Franchise Agreement, Defendants' continued operation of a competitive business under the CarePatrol System constitutes a material default under the Franchise Agreement and Noncompetition Agreement.

34. Further, Defendants' continued and unauthorized use of CarePatrol's Marks is an intentional, knowing, and wrongful infringement of CarePatrol's Intellectual Property and constitutes a material breach of the Franchise Agreement.

**Post-Termination Obligations and Noncompetition Agreement**

35. Pursuant to Section 14.01 of the Franchise Agreement, Defendants agreed not to compete with CarePatrol upon the termination of the Franchise Agreement. The Franchise Agreement provides, in pertinent part:

> "for two (2) years after termination [. . .] neither Franchisee, nor persons associated with Franchisee, including owners, managers, employees or agents, may participate directly or indirectly or serve in any capacity in any business engaged in the Senior Referral and Placement the same as, similar to, or competitive with the System. This covenant not to compete applies: (i) [ . . .]  after termination within a fifty (50) mile radius from the boundary of Franchisee's Protected Territory, and from any franchised, Franchisor-owned or affiliated company-owned premises; (ii) on the Internet; and (iii) on any other Multi-Area Marketing channels used by Franchisor.

(*See* Franchise Agreement at § 14.01.)

36. In the same way, the Nondisclosure and Noncompetition Agreement, attached to the Franchise Agreement as Exhibit I, provides for a similar post-termination covenant not to compete in a "Competitive Business," as defined by the Nondisclosure and Noncompetition Agreement, for a period of two (2) years within the same geographic restrictions as Section 14.01 of the Franchise Agreement. (*See* Franchise Agreement at Exhibit I, at § 5.)

37. Defendants agreed that any breach of Franchise Agreement and Noncompetition Agreement following the termination of the Franchise Agreement would threaten immediate and substantial irreparable injury to CarePatrol and would give CarePatrol the right to obtain immediate injunctive relief.  (*See* Franchise Agreement at Exhibit I, at § 6.)

38. Therefore, as a result of Defendants' continuing breaches of the Franchise Agreement, CarePatrol has and will continue to suffer damages, including but not limited to, loss of good will and loss of reputation.

39.     Section 17.07 of the Franchise Agreement and Section 13 of the Noncompetition Agreement provide that in the event either party institutes legal proceedings to enforce provisions of either Agreement, that the prevailing party shall be entitled to recover attorneys' fees and costs from the losing party. (*See* Franchise Agreement at § 17.07; Noncompetition Agreement, at § 13).

**Personal Guaranty of the Franchise Agreement**

40.     At the time of the execution of the Franchise Agreement, Defendant Kirby contemporaneously executed a personal Guaranty of the Franchise Agreement (the "Guaranty"). (*See* Franchise Agreement at Attachment V).

41.     In doing so, Defendant Kirby guaranteed to CarePatrol that Defendants would perform each and every covenant in the Franchise Agreement and any ancillary agreement executed between CarePatrol and Defendants in connection with the Franchise Agreement.

42.     Specifically, Defendant Kirby agreed to the "timely performance of each term, covenant, and obligation of the license set forth in the CAREPATROL Franchise Agreement as described above." (*See* Franchise Agreement at Attachment V, at § 1.01).

43.     As it relates to the non-competition provisions, Defendant Kirby "agree[d] that [she] shall be individually bound by the provisions of the Franchise Agreement relating to trade secrets, confidentiality, and non-competition." (*See* Franchise Agreement at Attachment V, at § 4.04).

44.     Pursuant to the Guaranty, Defendant Kirby is personally liable for the foregoing breaching conduct.

8

## COUNT I – BREACH OF NON-COMPETITION AGREEMENT
(Against all Defendants)

45. CarePatrol incorporates by reference the preceding allegations as if fully restated herein.

46. The Noncompetition Agreement is a valid and enforceable agreement which requires, among other things, that Defendants not own, operate, or have any interest, (as an owner, partner, director, officer, employee, manager, consultant, shareholder, creditor, representative, agent or in any similar capacity) in any competitive business.

47. The Franchise Agreement and Noncompetition Agreement provide that Defendants are not to compete with CarePatrol for a period of two (2) years within the Protected Territory, as defined in the Franchise Agreement.

48. Defendants have breached their obligations to CarePatrol under the Noncompetition Agreement by continuing to operate a business that provides similar or identical services that Defendants provided as a franchisee of CarePatrol in contravention of the Franchise Agreement and Noncompetition Agreement, as Defendants have not waited one (2) years from the termination of the Franchise Agreement to engage in a competitive business.

49. Defendants have further breached their obligations to CarePatrol under the Franchise Agreement and Noncompetition Agreement by operating a competitive business within the geographic area in which Defendants are prohibited from engaging in or operating a competitive business.

50. CarePatrol performed all of its obligations to Defendants under the Noncompetition and Franchise Agreements.

51. As a direct and proximate result of Defendants' breaches of the Noncompetition Agreement as described herein, CarePatrol has suffered and will continue to suffer damages in full amounts that have yet to be determined.

52. CarePatrol will also suffer irreparable harm if Defendants are not prohibited from ceasing operation of their competitive business in violation of the Franchise Agreement and Noncompetition Agreement.

53. Defendants' competitive activities have resulted in direct competition with other CarePatrol franchisees.

54. A temporary and permanent injunction against Defendants for their continued breach of the Agreement is reasonably necessary to protect CarePatrol's legitimate business interests. If Defendants are not immediately enjoined, CarePatrol will suffer irreparable harm.

WHEREFORE, CarePatrol demands: (1) temporary and permanent injunctive relief restraining Defendants from directly and indirectly competing with CarePatrol according to the terms of the Franchise Agreement; (2) compensatory damages and disgorgement of profits resulting from CarePatrol's breach of the Agreement; (3) entry of an order directing Defendants to pay CarePatrol's reasonable attorneys' fees and costs pursuant to Fla. Stat. § 542.335(1)(k); and (4) such other relief as this Court deems just and appropriate.

## COUNT II – BREACH OF THE FRANCHISE AGREEMENT
(Against all Defendants)

55. CarePatrol incorporates by reference the preceding allegations as if fully restated herein.

56. The Franchise Agreement is a valid and enforceable agreement which requires, among other things, that Defendants refrain from (a) operating a competitive business within the Protected Territory for a period of two (2) years following the termination of the Franchise

Agreement; and (b) the use of CarePatrol's Intellectual Property as set forth in the Franchise Agreement.

57. CarePatrol performed all of its obligations to Defendants under the Franchise Agreement.

58. As stated above, Defendants' conduct constitutes a breach of the above-described contractual obligations contained in the Franchise Agreement.

59. As a direct and proximate result of Defendants' breaches of the Franchise Agreement as described herein, CarePatrol has suffered and continues to suffer, irreparable harm. Further, CarePatrol has incurred, and continues to incur, monetary damages in a full amount that has yet to be determined.

## COUNT III – FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114
(Against all Defendants)

60. CarePatrol incorporates by reference the preceding allegations as if fully restated herein.

61. CarePatrol has applied for and obtained registrations for its CarePatrol Marks. The registrations are: 3698342 and 5835831.

62. The CarePatrol Marks are inherently distinctive, arbitrary and fanciful and has acquired secondary meaning. The public associates the CarePatrol Marks exclusively with CarePatrol's services. This is a result of the inherent distinctiveness of the Marks and of the distinctiveness acquired through extensive advertising, sales, and use in commerce, throughout the United States in connection with CarePatrol's services and franchise system.

63. Despite these well-established rights, Defendants have used and continue to use, without CarePatrol's authorization, CarePatrol's Marks in connection with the operation of Defendants' competitive business.

64. Defendants' infringing use of CarePatrol's Marks is likely to confuse or deceive the public into believing, contrary to fact, Defendants' business is sponsored, franchised, licensed, or otherwise approved by, or in some way connected with or affiliated with CarePatrol. This is especially true in light of the relatedness of the services offered by both parties, the marketing channels used, and the customers targeted by the parties.

65. Defendants' infringement of CarePatrol's Marks is in violation of § 32 and §43(a) of the Lanham Act, 15 U.S.C. § 1114 and 1125(a), respectively.

66. Defendants' misappropriation has been, and continues to be done, with the intent to cause confusion, mistake, and to deceive consumers concerning the source and/or sponsorship of Defendants' services.

67. Unless enjoined, Defendants' infringement has caused and will continue to cause CarePatrol immediate and irreparable injury. Accordingly, Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116 because the irreparable injury is in an amount not yet ascertainable, and for which Plaintiff has no adequate remedy at law.

68. As a direct and proximate result of Defendants' conduct, CarePatrol is entitled to damages, treble damages, statutory damages, the equitable remedy of an accounting for, a disgorgement of, all revenues and/or profits wrongfully derived by Defendants' through their infringement and all attorney fees and costs pursuant to 15 U.S.C. § 1117.

### COUNT IV- UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)
(Against all Defendants)

69. CarePatrol incorporates by reference the preceding allegations as if fully stated herein.

70. Defendants' use of CarePatrol's Marks is likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or approval of Defendants' services

71. Defendants' use of CarePatrol's Marks constitutes unfair competition within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72. Defendants have engaged in acts of unfair competition with full knowledge of such unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

73. Defendants have engaged in acts of unfair competition with the intent to cause confusion, mistake, and deception among the public as to the source, origin, sponsorship, or approval of Defendants' services.

74. As a result of Defendants' actions, CarePatrol has suffered, and continues to suffer, irreparable harm. Further, CarePatrol has incurred monetary damages in a full amount that has yet to be determined.

### COUNT V – BREACH OF GUARANTY
(Against Defendant Kirby)

75. CarePatrol incorporates by reference the preceding allegations as if fully restated herein.

76. At the time Defendants entered into the Franchise Agreement, they executed a Personal Guaranty of the Franchise Agreement (the "Guaranty"), conferring personal liability upon Defendant Kirbby for any breaches of the Franchise Agreement by Defendants. S*ee* Attachment V to Franchise Agreement.

77. The Guaranty is a valid and enforceable agreement between CarePatrol and Defendant Kirby.

78. Pursuant to the Guaranty, Kirby personally guaranteed and assured the full and complete performance of the Defendants under the Franchise Agreement, which included the Noncompetition Agreement and the Post-Termination obligations.

79. Defendant Kirby breached the Guaranty by failing to ensure or otherwise causing Defendants to breach their obligations under the Franchise Agreement and Noncompetition Agreement.

80. As a direct and proximate result of Defendants' breaches of the Franchise Agreement, Noncompetition Agreement, and Defendant Kirby's breaches of the Guaranty as described herein, CarePatrol has suffered and will continue to suffer, damages.

## COUNT VI – INJUNCTIVE RELIEF
(Against all Defendants)

81. CarePatrol incorporates by reference the preceding allegations as if fully restated herein.

82. Defendants actions in using CarePatrol's Marks and operating a competitive business are violations of the Franchise Agreement and Noncompetition Agreement.

83. It is probable that CarePatrol will recover from Defendants after a trial on the merits on its claims for breach of contract, false advertising, and trademark infringement.

84. The Franchise Agreement, Noncompetition Agreement, and Guaranty represent valid and enforceable contracts.

85. Pursuant to the Franchise and Noncompetition Agreements, Defendants were bound by the provision to not own, operate, or have any interest in a competitive business during the Post-Term Restricted Period.

86. The Franchise Agreement also provides that CarePatrol "is the sole and exclusive owner of the Intellectual Property and the goodwill associated with the Marks," that the use of CarePatrol's Intellectual Property is derived solely from the Franchise Agreement, and that use

of the Intellectual Property is limited to a license granted by CarePatrol during the term of the Franchise Agreement. (*See* Franchise Agreement at § 6).

87. Defendants admit in the Franchise Agreement that the terms of the restrictive covenant are reasonable limitations as to time, geographic area, and scope of activity to be restrained and do not impose a greater restraint than necessary to protect the goodwill or other business interest of CarePatrol. (*See* Attachment E to the Franchise Agreement at § 7).

88. Defendants' actions of utilizing the CarePatrol name and operating a competitive business plainly violates Defendants' obligations under the Agreements.

89. Defendants are unable to justify or defend their breaches and unauthorized conduct.

90. As a result of the foregoing, CarePatrol and suffered, and will continue to suffer certain, imminent, and irreparably injury as a result of Defendants actions, and if Defendants are allowed to continue to operate a competitive business in violation of the Franchise Agreement and Noncompetition Agreement, including but not limited to, economic injury, loss of goodwill, harm to its business reputation, loss of standing in the community, and loss of business opportunities.

91. Additionally, CarePatrol stands to suffer certain, imminent, and irreparable injury as a result of Defendants' co-branded advertisements which are likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by CarePatrol. These injuries include loss of reputation and loss of goodwill.

92. Defendants specifically agreed to the proprietary of injunctive relief in the Franchise Agreement and Noncompetition Agreement. (*See* Franchise Agreement at § 16.8; Noncompetition Agreement at § 8).

CarePatrol requests injunctive relief requiring that all Defendants:

a. immediately cease operation of Kirby Care, Inc., and any and all operations of any competitive business;

b. immediately cease any and all use of CarePatrol's name, brand, or other Intellectual Property as defined in the Franchise Agreement;

c. provide a detailed accounting of Defendants' business activities to CarePatrol in order for CarePatrol to receive its duly earned royalty fees.

d. abide by any and all continuing obligations under the Franchise Agreement.

## **PRAYER**

WHEREFORE, for the reasons stated above, CarePatrol respectfully requests that this Court grant the following relief:

a. An order enjoining and prohibiting Defendants from operating any "competitive business" as that term is defined and used in the Franchise and Noncompetition Agreement consistent with the terms therein;

b. An order enjoining Defendants, and their agents, servants, employees, and attorneys, from infringing upon CarePatrol's trademarks, trade names, and other Intellectual Property as that term is defined and used in the Franchise Agreement.

c. An order requiring Defendants to provide to CarePatrol a detailed accounting of Defendants' business activities in order for CarePatrol to receive its duly earned royalty fees;

  d. Prejudgment interest in accordance with Section 35 of the Lanham Act 15 U.S.C. § 1117 and applicable law;

  e. Its costs, expenses, and attorneys' fees incurred in connection with this action pursuant to Fla. Stat. § 542.335(1)(k) and Section 35 of the Lanham Act, 15 U.S.C. § 1117;

  f. A judgment in favor of CarePatrol for actual, consequential and/or equitable damages incurred as a result of the breaches of the Franchise Agreement, Noncompetition Agreement, and Guaranty;

  g. An order requiring Defendants to abide by any and all continuing obligations under the Franchise Agreement;

  h. An order granting CarePatrol any such additional relief as this Court deems just and equitable.

Respectfully submitted this 26th day of June, 2020.

          **DICKINSON WRIGHT PLLC**
          350 East Las Olas Blvd., Suite 1750
          Fort Lauderdale, FL 33301
          Tel.: (954) 991-5420
          Fax: (844) 670-6009

          *Vijay G. Brijbasi*
          Alan J. Perlman, Esq.
          Florida Bar No. 826006
          aperlman@dickinsonwright.com
          Vijay G. Brijbasi, Esq.
          Florida Bar No. 15037
          vbrijbasi@dickinsonwright.com

CASE NO.:

## VERIFICATION

I, _Becky Bongiovanni_, as _President_ of CarePatrol Franchise Systems, LLC, the plaintiff in the above styled action, hereby declare under penalty of perjury that the facts contained in the foregoing Verified Complaint are true and correct.

Executed on June 22, 2020.

_____